UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

YOSVANIS CASTILLO PANEQUE,

      Petitioner,

v.                                    Case No.  2:25-cv-1179-JES-NPM

MATTHEW MORDANT, ACTING
DIRECTOR OF IMMIGRATION AND
CUSTOMS ENFORCEMENT,
SECRETARY OF DEPARTMENT OF
HOMELAND SECURITY, MIAMI
FIELD OFFICE DIRECTOR ICE,
and ATTORNEY GENERAL OF THE
UNITED STATES,

      Respondents.
_____/

## OPINION AND ORDER

Before the Court are petitioner Yosvanis Castillo Paneque's petition for writ of habeas corpus (Doc. 1), the government's response (Doc. 9), and Castillo Paneque's reply (Doc. 12).  For the below reasons, the Court grants the petition to the extent set forth in this Order.

### I.   Background

Castillo Paneque is a native and citizen of Cuba.  He was paroled into the United States through Key West in August of 2003. (Doc. 9 at 2).  Castillo Paneque has an extensive criminal record, and it appears that he was in prison from September of 2005 to May of 2020.  (Doc. 1 at 6; Doc. 12 at 2).  Castillo Paneque was

ordered removed from the United States on January 30, 2008. (Doc. 1 at 6). After release from prison in 2020, Castillo Paneque was taken into Immigration and Customs Enforcement (ICE) custody. (Doc. 1 at 6). He remained in custody for 169 days, but ICE was unable to effectuate his removal during that time. (Id.) Thus, Castillo Paneque was released under an order of supervision. (Id.) On October 29, 2025, during a routine check-in at the ICE Field Office in Miramar, Florida, Castillo Paneque was taken into custody for the stated purpose of executing his removal order. (Id. at 6-7).

Castillo Paneque challenges the legality of his detention under the Due Process Clause of the Fifth Amendment, Zadvydas v. Davis, 533 U.S. 678 (2001), and the Immigration and Nationality Act ("INA"). (Doc. 1 at 8-12.)

## II.  Discussion

### A.    The Court has jurisdiction to consider Paneque's claims.

Respondents first argue that the Court lacks jurisdiction to consider this petition. (Doc. 9 at 4). They point to a provision that bars courts from hearing certain claims that states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to

2

> commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  But this jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999); see also Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves.").  "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs., 964 F.3d 1250, 1258 (11th Cir. 2020).

Respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus

3

> provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  But the zipper clause only applies to claims requesting review of a removal order.  See Madu v. U.S. Attorney Gen., 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Castillo Paneque does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order.  Nor does he ask the Court to review the removal order.  Rather, he challenges the legality and length of his detention based on procedural deficiencies and under a framework devised by the Supreme Court for district courts to apply.  See Zadvydas, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review.").  A decision in Castillo Paneque's favor would not impair ICE's ability to execute the removal order.  The INA does not strip the Court of jurisdiction over this action.

B.    **Castillo Paneque's continued detention violates the Supreme Court's framework in Zadvydas v. Davis.**

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days."  Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313

4

(11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).   The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.   Detention may continue after the removal period, but not indefinitely.

In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. at 700-01 (2001).   If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  Id. at 699.   The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]."  Id. at 701.  So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days.  Id.  Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention.   If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise.  Id.

Respondents argue that Castillo Paneque's petition is premature because—while he has been detained longer than 180 days

since his release from prison—his latest (current) detention has not yet exceeded 180 days.  They note that Paneque was detained for a second time on October 29, 2025, and he filed this petition less than 180 days later.  (Doc. 9 at 10).  In short, they assume that the six-month presumptively reasonable period of detention resets each time a noncitizen is detained.  That assumption is inconsistent with Zadvydas because it would effectively allow ICE to detain noncitizens indefinitely and avoid judicial scrutiny by simply releasing and re-detaining them every 180 days.  The Zadvydas framework explicitly guards against indefinite detention. 533 U.S. at 682 ("Based on our conclusion that indefinite detention of aliens . . . would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation").

In 2020, Petitioner was detained for 169 days before he was released because removal was not significantly likely in the reasonably foreseeable future.  (Doc. 1 at 6.)  Now, more 90 additional days have passed since his re-detention.  Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies.  Castillo Paneque has carried his initial burden by showing good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.  ICE made that determination when it released him in 2020, and it has been unable to remove Castillo

Paneque in the intervening years or in the 90 days since his latest detention.  Respondents make no real attempt at rebuttal.  They assert that "ICE has determined it intends to remove Castillo Paneque to Mexico."  (Doc. 9 at 3).  They do not, however, allege that Mexico has agreed to accept Castillo Paneque or that Mexico routinely accepts Cuban nationals removed from the United States.[1] Nor do they allege that U.S. officials have contacted Mexico about accepting Castillo Paneque specifically.  Under, Zadvydas this is insufficient to show a realistic likelihood of removal.

### III. Conclusion

The Court finds no significant likelihood Castillo Paneque will be removed in the reasonably foreseeable future.  He is entitled to release from detention under Zadvydas, but he remains subject to the terms of the order of supervision.  If Castillo Paneque fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the

---

[1] See 8 C.F.R. 241.13(f) ("Factors for consideration [as to whether there is a significant likelihood of removing a detained alien]. The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.").

right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Paneque to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED:**

1.    Yosvanis Castillo Paneque's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED.**

2.    Respondents shall release Castillo Paneque within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on January 30, 2026.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

8